[No. AO15589. First Dist., Div. One. Jan. 23, 1984.]

RON LEAF et al., Plaintiffs and Appellants, v.
CITY OF SAN MATEO, Defendant and Appellant.

## Counsel

Ron Leaf, in pro. per., for Plaintiffs and Appellants.

Phillip H. Cherney and Jedeikin & Connor for Defendant and Appellant.

## Opinion

**RACANELLI, P. J.**—Plaintiffs and appellants Ron Leaf and Ellen Leaf, his wife, brought an action in inverse condemnation against defendant and respondent City of San Mateo (hereafter City) to recover subsidence damage to their property caused by a sewer project constructed by the City. A jury trial resulted in a special verdict in favor of plaintiffs fixing damages in the sum of $130,500 plus interest allowed by law. During postjudgment proceedings, the trial court awarded plaintiffs prejudgment interest on the net judgment from January 28, 1977, the date the complaint was filed, computed in the amount of $35,238.[1] The trial court also awarded costs in the sum of $9,674 but disallowed a claim for reasonable attorney fees. City's motions for judgment n.o.v. and a new trial were denied. ■ ■ ■

---

[1] The net judgment of $109,500 reflects a stipulated offset of a $21,000 settlement received by plaintiffs in an earlier action against the developer and former owner of the property.

■ Plaintiffs appeal from the order denying attorney fees, and City cross-appeals from the adverse judgment and order awarding prejudgment interest and denying judgment n.o.v. or a new trial.[2]

*Facts*

The record lodged on appeal by the parties is limited to partial reporter's and clerk's transcripts and does not include the reported trial proceedings. However, the salient facts surrounding the inverse condemnation action may be gleaned from an earlier decision on plaintiffs' successful appeal from an order granting City summary judgment on the basis of a statute of limitations. (See *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398 [163 Cal.Rptr. 711].)[3] In essence, plaintiffs' claim was based on subsidence damage to their duplex resulting from deprival of lateral and subjacent support caused by a defective sewer trench and main installed by the City in close proximity to the building foundation. (*Id.*, at pp. 403-404.)

*Plaintiffs' Appeal*

Plaintiff Ron Leaf, an active member of the State Bar of California, who appeared throughout these proceedings in pro. per. and in behalf of plaintiff Ellen Leaf, requested an award for attorney fees under the authority of section 1036 of the California Code of Civil Procedure.[4] Relying principally on the reasoning of *Parker* v. *City of Los Angeles* (1974) 44 Cal.App.3d 556, 567 [118 Cal.Rptr. 687] (discussing predecessor § 1246.3 containing identical provisions), plaintiffs contend that fees are recoverable as a component cost of litigation "actually incurred" as a result of the economic expenditure of plaintiff Ron Leaf's professional time and skills in handling

---

[2]Although an appeal will lie from an order denying judgment n.o.v. (Code Civ. Proc., § 904.1, subd. (d)), the order denying a new trial is nonappealable but subject to review on appeal from the judgment. (See 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 117, p. 3694.)

[3]A related appeal arising from the City's cross-complaint for indemnity against the builder-developer is presently pending before this court. (*City of San Mateo* v. *San Mateo Investment Co.*, AO 14419.)

[4]Code of Civil Procedure section 1036 provides: "In any inverse condemnation proceeding brought for the taking of any interest in real property, the court rendering judgment for the plaintiff by awarding compensation for such taking, or the attorney representing the public entity who effects a settlement of such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will, in the opinion of the court or such attorney, reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." (Added by Stats. 1975, ch. 1240, § 8, p. 3164.)

the earlier appeal and underlying trial. City renews its argument, successfully advanced below, that no recovery is permitted under the statute for professional services rendered by an attorney acting in pro. per. since no attorney fees are thereby "actually incurred."

In *Holtz* v. *San Francisco Bay Area Rapid Transit Dist.* (1976) 17 Cal.3d 648 [131 Cal.Rptr. 646, 552 P.2d 430], the court rejected a claim for attorney fees *on appeal* (pursuant to former § 1246.3) under the following analysis: "The established rule is that allowance of expert witness and attorney fees is not required by the just compensation clause of article I, section 19, of the California Constitution, and that the discretion to provide for award of these costs lies with the Legislature. (*County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538].) Section 1246.3 is the sole source of any right to litigation costs in an inverse condemnation proceeding, and therefore that right is limited by the language of the statute." (*Id.*, at p. 658.)

Historically, California courts have consistently held that an attorney who acts pro se is not entitled to an award of attorney fees as compensation for professional services thus rendered. (*City of Long Beach* v. *Sten* (1929) 206 Cal. 473 [274 P. 968] [condemnation action abandoned by the city; attorney fees provided by statute]; *Patterson* v. *Donner* (1874) 48 Cal. 369, 380 [mortgage foreclosure action; attorney fees provided by contract]; *O'Connell* v. *Zimmerman* (1958) 157 Cal.App.2d 330, 337 [321 P.2d 161] [interpleader action; attorney fees provided by statute]; *City of Los Angeles* v. *Hunt* (1935) 8 Cal.App.2d 401, 403-404 [47 P.2d 1075] [eminent domain action; attorney fees provided by statute].)

More recently, however, a majority of the California Supreme Court has questioned the logic of those past decisions. "Although such an attorney [acting pro se] does not pay a fee or incur any *financial* liability therefor to another, his *time spent* in preparing and presenting his case is not somehow rendered less valuable because he is representing himself rather than a third party." (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 915, fn. 13 [160 Cal.Rptr. 124, 603 P.2d 41], original italics.) Thus, notwithstanding the general rule denying fees to an attorney acting pro se, the majority applied the common fund doctrine and sustained an award of attorney fees to a litigant who had nominally represented himself but had in effect also represented the interests of similarly situated ratepayers in successfully establishing a $400,000 fund to be expended for the public benefit. (*Id.*, at pp. 914-915.) "[H]e should be compensated when he represents himself if he would otherwise be entitled to such compensation, . . ." (*Id.*, at p. 915, fn. 13.)

A similar approach was taken by a federal appeals court in concluding that attorney fees should not be denied simply because the litigant is an attorney representing himself. "The appellees have actually suffered pecuniary loss, since they have been required to take time away from their practices to prepare and defend the suit. [Citation.] Legal services have actually been performed." (*Ellis* v. *Cassidy* (9th Cir. 1980) 625 F.2d 227, 231.)

In the case at bench, plaintiff Ron Leaf represented not only himself but also his wife in their inverse condemnation action. Although plaintiffs did not incur any financial liability to pay a fee to another attorney, plaintiff Ron Leaf apparently spent considerable time and professional effort in researching, preparing and presenting their case through trial.[5]

It would be illogical and unjust to conclude that because an attorney-litigant has provided valuable professional services in his or her own behalf, no litigation cost for such services has been actually incurred within the meaning of the statute. It seems obvious that prosecution of an inverse condemnation action by an attorney acting pro se involves a tangible commitment of time and skills—a lawyer's only "stock in trade"—having a substantial economic value which realistically could have been available for other gainful application. It would be anomalous to conclude that if a similarly situated attorney were to incur a financial liability to oneself by reason of employment by a self-owned professional law corporation (see Bus. & Prof. Code, § 6160 et seq.), that attorney could recover but not one who renders the same services albeit without the formality of actual payment from one pocket to the other. ■ Thus, we determine that where, as here, an attorney acts pro se in prosecuting an inverse condemnation action, such attorney is entitled to recover the reasonable value of the professional services necessarily rendered during pretrial and trial proceedings. (See *Holtz* v. *San Francisco Bay Area Rapid Transit Dist., supra,* 17 Cal.3d at p. 658.)[6]

---

[5]Plaintiffs originally retained attorney Harold Martin to represent them in the inverse condemnation action under an agreement providing for an initial $500 retainer plus one-third of any recovery. This agreement was terminated in January 1979, and plaintiff Ron Leaf proceeded pro se thereafter.

[6]In order to provide guidance on remand, we add the following observations relating to the attorney fees claim. First, we cannot accept plaintiffs' argument that a one-third contingency fee based upon the net recovery should be applied. In that regard plaintiffs' reliance on *Parker* v. *City of Los Angeles, supra,* 44 Cal.App.3d 556, is misplaced. Unlike *Parker* (contingency fee allowed as reasonable costs for services rendered by retained attorneys), no evidence was presented that a customary practice of contingency fee arrangement prevailed in the local jurisdiction (*id.,* at p. 567), or that such arrangement was otherwise appropriate to compensate for pro se activities. We think the general rule of compensation on a quantum meruit basis within the sound discretion of the trial court is the reasonable

### City's Cross-appeal

In its cross-appeal City claims that instructional error was committed relating to the valuation date in computing damages and that the award of prejudgment interest is excessive.[7]

The jury was instructed to assess damages based upon the property's fair market value as of August 17, 1981, the date of commencement of trial. It was undisputed that plaintiffs' property had *appreciated* in value from the time of injury (1976) to the time of trial (1981). It appears that the evidence considered by the jury reflected that the property in an undamaged condition would have had a market value at time of trial ranging from $252,000 to $280,000, but that repair costs of drainage and structural work would amount to $138,000; further that both market value and costs of repair were lower in 1976 when the injury was first discovered.

 The City contends that the resulting assessment of damages was erroneous because the date of valuation and actual loss should have been the earlier date of injury. We disagree.

Throughout its briefs the City confuses eminent domain proceedings with inverse condemnation actions. Although both seek just compensation for property taken by a public entity, important legal and practical distinctions exist between the two. Eminent domain proceedings are governed by a comprehensive statutory scheme. (Code Civ. Proc., § 1263.010 et seq.) Section 1263.010 declares that "Nothing in this chapter affects any rights the owner of property acquired by eminent domain may have under any other statute." The Law Revision Commission comment reveals that the statutory scheme is designed to cover only eminent domain proceedings, while the law of inverse condemnation is left for judicial development.

In a condemnation proceeding the "taking" by the governmental body generally occurs contemporaneously with the institution of suit, and thus

---

and proper standard to be applied in determining the value of the services rendered.

Secondly, while it is settled that fees may not be recovered for services rendered in a "later appeal" from an inverse condemnation judgment (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist., supra,* 17 Cal.3d at p. 659), no similar restriction appears with reference to pretrial appeal proceedings necessarily required to preserve plaintiffs' cause of action. Indeed, had the earlier summary judgment not been successfully appealed, trial on the merits of the action would have been foreclosed. Accordingly, the reasonable value of plaintiff Ron Leaf's services in prosecuting such appeal should be considered in determining the amount due plaintiffs.

[7]City also challenges the damages awarded by the jury as excessive and unsupported by the evidence. But the record furnished by stipulation of the parties fails to include a transcript of the evidence presented at trial. In the absence of a record to enable us to review the sufficiency of the evidence, we deem the City's claim of error waived. (See generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 373, p. 4345.)

compensation is based on a relatively current value of the land. Code of Civil Procedure sections 1263.120 and 1263.130 state the rule that the date of valuation is either the *date of commencement of the proceeding* or, if trial is not held within one year after commencement, the *date of trial.*

Conversely, when the taking occurs by physical invasion rather than by formal condemnation, the established rule is that the time of taking is the *time of the invasion,* and it is that event which gives rise to the claim for compensation and fixes the date of valuation. (*McDougald* v. *Southern Pacific R. R. Co.* (1912) 162 Cal. 1 [120 P. 766].) However, recognizing the hardship which may befall a property owner if such an early date is used where the property value has increased over time, our high court has concluded that the property owner should be permitted to enjoy the resulting increase in value if no fault is shown in failing to pursue available remedies promptly. (*Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 296-298 [74 Cal.Rptr. 521, 449 P.2d 737]; *Mehl* v. *People* ex rel. *Dept. Pub. Wks.* (1975) 13 Cal.3d 710, 719-720 [119 Cal.Rptr. 625, 532 P.2d 489]; cf. *Rovetti* v. *City and County of San Francisco* (1982) 131 Cal.App.3d 973, 977-978 [183 Cal.Rptr. 1] [inflated cost of repairs at time of trial held proper measure of damages in tort action].) ■ Since neither absence of diligence nor culpability is shown, the jury was correctly instructed to fix damages based on the value of the property at the time of trial.

■ Next, City argues that the award of prejudgment interest running from the date the complaint was filed (Jan. 1977) is excessive in that it unfairly allows interest on the *appreciated* value used in determining just compensation. (See *Orme* v. *State of California* ex rel. *Dept. Water Resources* (1978) 83 Cal.App.3d 178 [147 Cal.Rptr. 735].) We agree.

■ It is well established that prejudgment interest is recoverable as part of the just compensation due in an inverse condemnation action. (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist., supra,* 17 Cal.3d 648, 657; *Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746, 758-759 [185 P.2d 597], overruled on another point, *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680].) In order to provide the property owner full compensation, interest will usually be computed from the date of the taking—i. e., the date damage was inflicted. (*Holtz, supra,* 17 Cal.3d 648; *Heinmann, supra,* 30 Cal.2d 746; *Orme* v. *State of California* ex rel. *Dept. Water Resources, supra,* 83 Cal.App.3d 178, 186; *Parker* v. *City of Los Angeles, supra,* 44 Cal.App.3d 556, 565.) But equity considerations have supported the use of a later date in computing prejudgment interest. (*Mehl* v. *People* ex rel. *Dept. Pub. Wks., supra,* 13 Cal.3d 710, 720 [date of discovery of water flow damage due to freeway construction rather than

date of construction since "taking" did not become appreciable until then]; *Amador Valley Investors* v. *City of Livermore* (1974) 43 Cal.App.3d 483, 494-495 [117 Cal.Rptr. 749] [trial court's choice of a date after the complaint was filed and approximately midpoint during period of continuing damages upheld as fair]).

■ Considerations of fairness likewise compel the use of a later date herein in computing prejudgment interest. Plaintiffs' damages were properly measured from the date of commencement of trial resulting in the benefit of appreciated value since the date of injury. Such measure of damages adequately provides for just compensation for the taking based upon the inflated value. The evidence of damages sustained related largely, if not exclusively, to costs of repair necessary to correct the injury or taking. To permit an award of interest on a judgment reflecting that cost component would not only result in unjust enrichment but also sanction interest on a monetary loss accrued but not yet paid or incurred. Under the special circumstances shown, prejudgment interest should be fixed on the net judgment from the valuation or trial date.

The judgment and order denying judgment n.o.v., and each, is affirmed. The postjudgment order denying attorney fees and awarding prejudgment interest is reversed, and the matter is remanded for further proceedings consistent with the views expressed herein. Plaintiffs' request for sanctions on the grounds of frivolous appeal is denied. The appeal from the order denying a new trial is dismissed. The parties shall bear their own costs on appeal.

Newsom, J., and Holmdahl, J., concurred.

Petitions for a rehearing were denied February 16, 1984, and petitions of all the parties for a hearing by the Supreme Court were denied March 29, 1984.